# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 9 C 1505 | **DATE** | 5/2/2011 |
| **CASE TITLE** | Taubensee Steel & Wire Co. v. Macsteel Int'l USA Corp. | | |

**DOCKET ENTRY TEXT**

Before the Court is Defendant Macsteel Int'l USA Corp.'s Motion to Exclude the Opinion Testimony of Kevin L. Jones. [71] For the reasons that follow, the motion is denied.

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Defendant's Motion to Exclude the Opinion Testimony of Kevin L. Jones. [71] For the reasons that follow, the motion is denied.

### I. BACKGROUND

The instant lawsuit is a contract dispute over two loads of steel wire purchased by Plaintiff Taubensee Steel & Wire Co. ("Taubensee") from Defendant Macsteel Int'l USA Corp. ("Macsteel"). Taubensee rejected one load of low carbon steel on the basis that exceeded the company's limits on rust levels. An order for another load, of high carbon steel, was cancelled before it was delivered. Taubensee originally filed suit seeking a declaratory judgment that it was not required to arbitrate the dispute. Subsequently, Macsteel agreed to litigate the dispute in this Court. A bench trial is set for May 9, 2011.

At issue here is a report submitted by Taubensee's expert Kevin L. Jones, an engineer who inspected the low carbon steel coils on September 21 and 22, 2009, about a year after the steel was shipped. Jones opines that the steel did not meet Taubensee's requirements at the time of delivery, in particular because it exceeded Rust Level 3 of the company's specifications. (Taubensee employs a visual rating system from 1–8 for the rust level on steel coil, with 1 meaning there is no rust on the coil, and 8 meaning that the outer surface is entirely covered in rust.)

The low carbon steel wire rod was produced by a mill in China and delivered to the Normaco terminal in Lemont, Ill. on Oct. 13, 2008, for use by the Taubensee plant in Chicago. After workers at the terminal noted damage to the coils, a series of surveys of the coil were undertaken by Taubensee's employees. On Oct. 31, 2008, Jesus Rodriguez noted loose and damaged coils as well as a Rust Level from 4 to 6 on some of the coils. Taubensee's Ken Gorman inspected 466 of the 729 coils on Nov. 5, 2008, and reported Rust Levels between 5 to 7 or 6 to 8.

# STATEMENT

Following its normal course for when customers submit a damage claim, Macsteel notified the marine surveyors, who conducted a joint survey of the surveyors representing the various interests in the cargo. According to Macsteel, the surveyors concluded that any rust was atmospheric in nature and was not a concern. Taubensee, however, contended that the rust on every coil exceeded its specifications.

In reaching his conclusion supporting that contention, Jones reviewed reports and photographs documenting the condition of the steel throughout the shipment process. Included in his analysis were the reports discussed above and a report by surveyor Jason Fernandes, dated Feb. 6, 2009, indicating that a pre-loading inspection of the steel in China found that it had been stored in an open yard without cover and had rust stains on the outer surfaces and entangled coils.

At his deposition, Jones testified that the steel did not degrade from the time it was unloaded in October 2008 until the time he inspected it about a year later. Jones testified that he reached that conclusion by comparing his inspection photographs of the steel to prior reports and photographs of the steel.

Macsteel seeks to exclude Jones' testimony, arguing: (1) his methodology was so subjective that Jones' opinion should be excluded under Fed. R. Evid. 702; and (2) his visual inspection of the steel one year after its delivery will not aid the trier of fact because Jones does not know what happened to the coils in the intervening year. Macsteel also seeks to exclude any testimony by Jones as to the tensile strength of the high carbon steel, but the Court need not address that issue because Taubensee has said that Jones will not offer such an opinion.

## II. ANALYSIS

The admissibility of scientific or technical evidence is governed by Fed. R. Evid. 702 and the standards outlined by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The gate-keeping function required of the Court by this rule is meant to ensure that expert testimony is both reliable and relevant. *United States Gypsum Co. v. LaFarge North America, Inc.*, 670 F. Supp. 2d 748, 751 (N.D. Ill. 2009) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

In *Daubert*, the high court outlined several factors that judges should consider in evaluating scientific evidence, including: (1) whether a theory or technique can be, and has been, tested; (2) whether a theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique is generally accepted in the scientific community. 509 U.S. at 592–94. However, these specific factors may not be relevant to every case, and it is the court's job to determine whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Schnur v. Kohl's Dep't Stores, Inc.*, 06 C 3040, 2010 WL 4930687, at *3 (quoting *Kumho Tire*, 526 U.S. at 152); *see Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1116 (N.D. Ill. 2005) (noting that in

cases where the reliability concerns involve personal knowledge or experience "it would be difficult or impossible to apply the *Daubert* factors.").

It should be noted that Macsteel does not challenge Jones' qualifications in his field. Jones is a licensed engineer who worked in the steel industry for several years, during which time he frequently examined steel coils to determine if they met customer specifications. However, Macsteel does challenge Jones' methods and the reliability of his conclusions.

First, Macsteel notes that Jones relied in part on the reports made by Gorman and various surveyors. Macsteel contends that Jones is essentially "parroting" the information in those reports without analyzing the basis for these opinions. In particular, Macsteel challenges Jones' reliance on Fernandes' report because Jones did not know the circumstances of the preparation of the report, including who conducted the pre-loading inspection of the steel and when it was conducted.

The Court finds, however, that it was appropriate for Jones to rely on the reports of others in formulating his opinion. *See United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) (noting that Fed. R. Evid. 703 expressly permits experts to rely on facts or data from other sources, as long as the information is of the type reasonably relied on by experts in the field). Nor are the reports relied upon by Jones known to be unreliable. The questions Macsteel raises in regard to the basis of Fernandes' report go to the weight, and not the admissibility, of Jones' opinion. *Loeffler Steel*, 372 F. Supp. 2d at 1119.

Macsteel further challenges Jones' proposed testimony on the ground that Jones did not assess the steel according to an industry standard, but rather used Taubensee's own rust level guide. Macsteel contends that this renders the testimony unreliable, and notes that Jones and Gorman reached somewhat different conclusions in evaluating the rust level based on this standard. For example, Gorman rated some coils as Rust Level 5 to 7 shortly after the delivery, while Jones rated the same coils as Rust Level 4 to 5 a year later. Because steel cannot become less rusted with time, Macsteel contends this shows the subjective nature of Jones' testimony. Taubensee notes, however, that this type of visual inspection is the method employed by experts in the field. In fact, other surveyors, including Matthew Salkeld (a fact witness who may testify for Macsteel as to his opinion of the condition of the steel), employed similar methods.

The Court finds *United States Gypsum Co.*, 670 F. Supp. 2d at 757, instructive on this point. There, the court allowed an expert to opine on the uniformity of void dispersal in wallboard based on his visual examination of the wallboard. *Id.* The court rejected the argument that the expert needed to rely on CT scans to reach such a conclusion, noting, "In the real world of gypsum wallboard manufacturing, the board is analyzed for void uniformity by visual inspect of the core of board." *Id.* Here, too, Jones employed his expertise to analyze the steel coils in the same way they are analyzed by those in the industry. Any inconsistencies between his opinion and Gorman's go to the weight of his opinion, not its admissibility.

Finally, Macsteel contends that Jones' opinion will not aid the trier of fact (the Court in this case) because Jones cannot show that the steel was in the same condition when he inspected it as it was a year prior at the time of delivery. Jones examined 540 coils that were located inside a warehouse at Normaco and 152 coils that were stored outside. He could not say whether the coils had been moved over the course of the year.

Jones based his opinion that the steel did not degrade from the time of delivery to the time of inspection on his comparison of photos he took of the coils with prior photographs taken by Gorman. Macsteel contends that the photos were not a reliable method for assessing the amount of rust on the steel and

| STATEMENT |
|---|

argues that Jones could not definitively state that the coils in his photos were the same as those Gorman photographed. However, Jones testified that he was confident they were the same coils based on a comparison of heat numbers, or identification numbers. Although Jones' opinion that the coils did not further degrade in a year's time may be open to question, the Court will allow it. The Court notes that while the *Daubert* standards apply in a bench trial, concerns about the trier of fact being fooled by evidence of dubious merit are lessened when the judge is acting in that role. *See Loeffel Steel*, 372 F. Supp. 2d at 1122–23 (citing Judge Posner's analysis on this issue while sitting by designation *in SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1041–42 (N.D. Ill. 2003), *aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005)). The Court is capable of evaluating this evidence and giving it the weight that it deserves.

### III. CONCLUSION

For these reasons, Defendant's Motion to Exclude the Opinion Testimony of Kevin L. Jones [71] is denied.